**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

TARA BROWN,                          )
        Plaintiff,               )          Civil Action No. 15-284
                           )
     v.                               )          Magistrate Judge Robert C. Mitchell
                           )
ROBERT BURNETT and JOSEPH           )
CLEMENTE             ,               )
        Defendants.              )

## OPINION

       Presently pending before the court is Defendant Robert Burnett's Motion to Dismiss [ECF No. 29], with brief in support.  Plaintiff has filed a brief in opposition [ECF No. 33] and Defendant has filed a reply [ECF No. 37].  For the reasons that follow, we will grant the motion in as to Count I and deny it as to Counts II and III.

### I.  Introduction

       This action arises out of an incident that occurred in March of 2014 while plaintiff Tara Brown, a former inmate, was being transported from the Allegheny County Jail to a McKeesport, Pennsylvania magistrate court for her summary trial.   She alleges the defendants violated her rights under the Eighth and Fourteenth Amendments of the United States Constitution, invoking to 42 U.S.C.  § 1983, and a state law claim of intentional infliction of emotional distress. Defendant Burnett has filed a Motion to Dismiss Plaintiff's Amended Complaint, pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.  [ECF No. 29].

       Defendants Robert Burnett and Joseph Clemente are the two constables who transported Plaintiff in their police vehicle.  Plaintiff alleges that during transport, another passenger sitting next to her in the rear seat of the car,  known to defendants as having a history of violence,

exposed himself to plaintiff several times and asked for sexual favors, although he did not touch her. Plaintiff alleges she reported the incident to the defendants upon arrival at the magistrate court and defendants later disregarded her distress and placed her back in the vehicle with the perpetrator on the return trip to the jail. She now sues for violations of the Eighth (Count I) and Fourteenth (Count II) Amendments, pursuant to 28 U.S.C. § 1983, as well as a state law claim for intentional infliction of emotional distress (Count III).

We have jurisdiction pursuant to 28 U.S.C. § 1331.

## II. Legal Standard

A defendant moving to dismiss under Fed. R. Civ. P. 12(b)(6) bears the burden of proving that the plaintiff has failed to state a claim for relief. See Fed. R. Civ. P. 12(b)(6); *see also, e.g., Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005). To survive a Rule 12(b)(6) motion, the complaint must contain sufficient factual matter, accepted as true, to state a facially plausible claim to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009); *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678, 129 S.Ct. 1937.

As the Supreme Court stresses, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action . . . do not suffice." *Id.* Courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly,* 550 U.S. at 555, 127 S.Ct. 1955. In the wake of *Twombly* and *Iqbal,* our Court of Appeals laid out a two-part test to apply when considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6):

First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'

*Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009) (internal citations omitted). In deciding a motion to dismiss, we may consider "the allegations contained in the complaint, exhibits attached to the complaint and matters of public record," and any "undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." *Pension Benefits Guar. Corp. v. White Consol. Indus., Inc.,* 998 F.2d 1192, 1196 (3d Cir. 1993).

The court must allow amendment by the plaintiff in civil rights cases brought under § 1983 before dismissing pursuant to Rule 12(b) (6), irrespective of whether it is requested, unless doing so would be "inequitable or futile." *Fletcher–Harlee Corp. v. Pote Concrete Contractors, Inc.,* 482 F.3d 247, 251 (3d Cir. 2007).

With this standard in mind, we turn to the allegations of the Amended Complaint.

### III. Allegations in the Amended Complaint

Tara Brown, then-charged with a probation violation, was being transported from the Allegheny County Jail to a McKeesport, Pennsylvania magistrate hearing for her summary trial. [Amended Complaint, ECF No. 9 at ¶¶ 11, 12].   Defendants Robert Burnett and Joseph Clemente were the two constables who conducted the transport in their police vehicle.  [ECF No. 9 at ¶ 13].  Just prior to transport, Ms. Brown heard the constables discussing the man with whom she would be riding – Jabree Thornhill. [ECF No. 9 at ¶ 14].  The Defendant Constables stated that they needed to be careful with Thornhill because he was violent. [ECF No. 9 at ¶ 15]. They went on to say that the last time Thornhill was in a police vehicle he had, while handcuffed and shackled, (1) slipped his handcuffs, (2) kicked out one of the vehicle's back doors, (3) fled

from police, and (4) car jacked a woman before being caught. [ECF No. 9 at ¶ 16]. Ms. Brown was immediately afraid to ride with someone who was strong enough to escape from a locked police car and tried not to meet Thornhill's eyes or draw attention to herself. [ECF No. 9 at ¶ 17].

Plaintiff further alleges that as soon as they were both seated in the rear of Defendant Constables' police vehicle - Ms. Brown on the driver's side behind Defendant Burnett and Thornhill on the passenger side behind Defendant Clemente - Thornhill began to talk to Ms. Brown. [ECF No. 9 at ¶ 18]. Ms. Brown ignored Thornhill as much as possible without making him angry; she was extremely concerned that something she said would set Thornhill off. [ECF No. 9 at ¶ 19]. A few minutes into the ride, after their vehicle stopped at a red light and began moving again, Thornhill pulled out his penis over his pants and said to Ms. Brown "do you think it's big?" [ECF No. 9 at ¶ 22]. Thornhill kept his penis out for several seconds before slipping it back into his pants. [ECF No. 9 at ¶ 23]. Twice Thornhill is alleged to have again exposed himself to Ms. Brown and asked her if she would "suck it." [ECF No. 9 at ¶¶ 24, 27]. Ms. Brown repeatedly told Thornhill she was not interested and tried to ignore him. [ECF No. 9 at ¶ 30]. Given Thornhill's violent background, she was afraid that if she shouted for help he would attack her. [ECF No. 9 at ¶ 31].

Ms. Brown also knew that she could not defend herself if Thornhill jumped her because she was handcuffed and shackled. [ECF No. 9 at ¶ 32]. Furthermore, Ms. Brown was sexually molested for several years when she was a child, and in the face of Thornhill's unwanted advances she "froze inside." [ECF No. 9 at ¶33]. Ms. Brown alleges that Defendant Constables could not hear Thornhill's remarks because the constables had closed the glass partition between the front and back seat. [ECF No. 9 at ¶ 36]. Ms. Brown tried to get Defendant Constables' attention during the harassment by making eye contact in the rearview mirror and via her facial

expressions. [ECF No. 9 at ¶ 37]. At one point during the ride, Ms. Brown "knows she caught Defendant Burnett's attention, but he did not take any action." [ECF No. 9 at ¶ 38]. Defendant Clemente[1] later acknowledged that he saw her trying to get their attention and could tell by the look on her face that something was wrong.  [ECF No. 9 at ¶ 38 (a)-(c)].

Upon arrival, Ms. Brown reported Thornhill's behavior to defendants and stated "she could not handle riding in the car with Thornhill" on the return trip to the Allegheny County Jail after the hearings concluded.  [ECF No. 9 at ¶¶ 41, 42.] Although Defendants promised her she would be transferred to a different vehicle for the return trip, they instead placed her in the vehicle with Thornhill, with a third inmate between her and Thornhill; they asked the third inmate to "watch" Thornhill.   [ECF No. 9 at ¶¶ 44, 52.]  She further alleges that during the ride, she suffered extreme emotional distress and felt physically ill from fear. [ECF  No. 9 at ¶¶ 56, 57]. She further alleges that in a subsequent conversation with defendant Clemente, Clemente told her that it was defendant Burnett's idea to put her in the back of the vehicle with the random inmate between her and Thornhill, and Clemente did not feel those actions were appropriate. [ECF No. 9 at ¶ 60(a)-(b)].

Thornhill was later charged with three counts of indecent exposure and one count of harassment; he pled guilty to indecent exposure.  [ECF No. 9 at ¶¶ 61, 62]. Later, when Ms. Brown heard Thornhill was released, she feared for her safety because she knew Thornhill would hold her responsible for the additional charges against him. [ECF No. 9 at ¶ 63].

Plaintiff alleges this fear forced her to move her residence.  [ECF No. 9 at ¶¶ 63, 64]. Finally, she alleges that she continues to suffer emotional distress from this event; she currently is seeking counseling and has been prescribed medication for anxiety.  [ECF No. 9 at ¶ 66].

---

[1] Clemente has not moved to dismiss the Amended Complaint, and has filed an Answer. [ECF No. 15].

## IV. Discussion

As stated, Plaintiff asserts constitutional claims against state actor Defendants in her Complaint under § 1983. In a § 1983 civil rights action, the plaintiff must prove the following two essential elements: (1) that the conduct complained of was committed by a person acting under color of state law; and (2) that the conduct complained of deprived the Plaintiff of rights, privileges or immunities secured by the law or the Constitution of the United States. *Parratt v. Taylor,* 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981); *Kost v. Kozakiewicz,* 1 F.3d 176, 184 (3d Cir. 1993). Further, § 1983 is not a source of substantive rights. Rather, it is a means to redress violations of federal law by state actors. *Gonzaga Univ. v. Doe,* 536 U.S. 273, 284–85, 122 S.Ct. 2268, 153 L.Ed.2d 309 (2002).

That defendant is a state actor is not at issue. The parties have stipulated that constables are retained by district magistrates but are employees of the Commonwealth of Pennsylvania. [ECF No. 5 at 2].

### A. Whether Plaintiff's claims are barred by the PLRA

Defendant argues that Plaintiff's cause of action is barred by the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a) due to her incarcerated status. The PLRA states: "[n]o action shall be brought with respect to prison conditions ... by *a prisoner confined in any jail, prison, or other correctional facility* until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a) (emphasis added). Defendant has attached to their Brief in Support of his motion numerous bench warrants in support of his argument that Ms. Brown was incarcerated on the day she filed suit. Defendants states that "the Court may take judicial notice of the attached docket sheets (Exhibit "A"), which reveal that the Plaintiff has engaged in a lengthy course of criminal conduct" [ECF No. 30 at 3, n. 1] and "the Plaintiff has a lengthy criminal record.

Accordingly, there is nothing pled of record to suggest that the Plaintiff was *not* incarcerated at the time her Complaint was filed." [ECF No. 37 at 7] (emphasis added). We reject Defendant's argument. First, we note that Defendant has not provided specific citation to these attachments to support his broadly worded assertion. Second, we find Ms. Brown was incarcerated on the day in question, but it is clear from the wording of the Amended Complaint that Ms. Brown was a *former* inmate at the time she filed her suit. A prisoner who has been released is not precluded by the PLRA from filing a § 1983 suit for incidents concerning prison conditions which occurred prior to her release. *Ahmed v. Dragovich*, 297 F.3d 201, 210 (3d Cir. 2002). This action was brought on February 27, 2015. [ECF No. 1]. Her Amended Complaint clearly states that she resides in Homestead, Pennsylvania [ECF No. 9 at ¶ 3], alleges she was released soon after her hearing in McKeesport [ECF No. 9 at ¶ 11], and refers to a conversation with Defendant Clemente that took place in her apartment complex in McKeesport, Pennsylvania sometime after her release. [ECF No. 9 at ¶ 38a].

Accordingly, we will deny defendant's motion to the extent it is based on a bar by the PLRA.

## B. *Whether the conduct complained of constitutes cruel and unusual punishment*

Defendant moves to dismiss Count I on the grounds that his alleged conduct does not rise to the level of cruel and unusual punishment, either by placing her in the vehicle with Thornhill and ignoring her attempts to get his attention, or by having her return to the jail in the same vehicle as Thornhill after becoming aware of Thornhill's lewd behavior. Defendant notes that Ms. Brown has not pled that the defendant's actions lacked penological justification or that he was actually aware of Thornhill's conduct in the car on the first leg of the transport while such conduct was occurring.

The Eighth Amendment guards against the infliction of cruel and unusual punishment. U.S. Const. Amend. VIII. Among the guarantees associated with Eighth Amendment protection is the right to "'humane conditions of confinement.'" *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 256 (3d Cir. 2010) (*quoting Farmer v. Brennan*, 511 U.S. 825, 832, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994)). Notably, the conditions-of-confinement protection includes an affirmative duty on the government's part to "'take reasonable measures to guarantee the safety'" of those in its custody. *Id.* at 256 (*quoting Farmer*, 511 U.S. at 832, 114 S.Ct. 1970).

The parties do not dispute that Ms. Brown is subject to the protections of the Eighth Amendment by virtue of her detention status; she appears to have been a convicted inmate for purposes of this analysis. *Bell v. Wolfish*, 441 U.S. 520, 535-37 (1979). Her complaint alleges that she was "in prison because of a minor, or summary offense" and that this offense "triggered a violation of her probation" for her DUI offense "resulting in a short (although sadly traumatic) incarceration; she was released soon after her hearing in McKeesport. [ECF No. 9 at ¶¶ 10, 11].

Defendant cites to numerous cases in support of his argument that his conduct does not rise to the level of cruel and unusual punishment under the law. Broadly speaking, the cases he cites involve isolated instances of inappropriate conduct by prison officials and employees *themselves* and include allegations of actual contact of a sexual nature with plaintiffs. These cases cited generally hold that plaintiffs' allegations of physical touching were insufficient to establish an Eight Amendment violation. [See ECF No. 30 at 5-6].

In response, Plaintiff cites to a single case with a similar fact pattern, *Jordan v. Gardner*, 986 F.2d 1521 (9th Cir. 1993), wherein the Court of Appeals for the Ninth Circuit held that female prisoners with history of sexual abuse were subject to cruel and unusual punishment when prison official conducted random cross-gender pat downs because the pain and

psychological trauma suffered went beyond the momentary discomfort experienced during search procedures. *Id.* at 1526. Plaintiff concedes that *Jordan* is not binding on us, having been decided by a court of appeals in another circuit.

A punishment is cruel and unusual under the Eighth Amendment when it inflicts unnecessary and wanton pain, including those that are totally lacking in penological justification, *Rhodes v. Chapman*, 452 U.S. 337, 346, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981), and those which evince "calculated harassment unrelated to prison needs." *Hudson v. Palmer*, 468 U.S. 517, 530, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984). To be actionable, the "punishment" must be "objectively, sufficiently serious," and the official must have acted with a "sufficiently culpable state of mind." *Farmer*, 511 U.S. at 834.

As mentioned earlier, in his Brief in Support of the Motion to Dismiss, defendant cites numerous cases in support of his contention that inappropriate sexual advances by prison officials are not Eighth Amendment violations. [ECF No. 30 at 5-6]. These cases were addressed in *Banks v. Rozum*, 2015 WL 1186224 *13 (W.D. Pa. 2015), wherein Chief Judge Conti of this court recently granted defendants motion to dismiss an Eighth Amendment claim brought by a state prisoner who alleged that the defendant prison guard groped plaintiff's genitals, made sexually offensive comments, and threatened to sabotage Plaintiff's general population status. In so ruling, and as defendant herein explains, this court noted that "several courts have found that isolated instances of inappropriate conduct by prison officials do not violate an inmate's constitutional rights under the Eighth Amendment." 2015 WL 1186224 at *13-14.[2]

---

[2] The court cited:
*See, e.g., Washington v. Harris*, 186 F. App'x 865, 866 (11th Cir.2006) (holding that inmate failed to state an Eighth Amendment claim where a prison guard "crept up behind [the prisoner inmate] while he was working," grabbed his genitals, kissed him on the mouth, and threatened to perform oral sex on him); *Jackson v. Madery*, 158 F. App'x

We further note that the Court in *Banks* emphasized:

[O]nly severe or repetitive sexual abuse has been found to rise to the level of an Eighth Amendment violation. See, e.g., *Schwenk v. Hartford*, 204 F.3d 1187 (9th Cir.1999) [sic] (repeated requests for oral sex and attempted rape of inmate by prison guard may establish Eighth Amendment claim); *United States v. Walsh*, 194 F.3d 37 (2d Cir.1999) (corrections officer who repeatedly steps on inmate's penis to wantonly inflict pain violates inmate's right to be free of cruel and unusual punishment); *Berry v. Oswalt*, 143 F.3d 1127 (8th Cir.1998) (rape and harassment of inmate, including propositions, sexual comments, and attempts to perform non-routine pat-down violated inmate's Eighth Amendment right to be free from cruel and unusual punishment).

*Id*. at *14.

In response to Defendant's reliance on the above caselaw, Ms. Brown clarifies that her cause of action is distinguishable, given the length of time over which she was subjected to Thornhill's conduct and Burnett's awareness of Thornhill's violent past. She argues that Burnett's actions are different from a single pat-down or single incident. Burnett is alleged to have been acting over a course of an hour and a half with deliberate indifference and disregard to her well-being. [ECF No. 33 at 7]. These arguments are not persuasive. She clarifies, however, that she is alleging more specifically that Defendant Burnett *failed to protect* her, insofar as she alleges he was aware that Thornhill had acted out during a previous transport but disregarded her safety by "ignoring the backseat and failing to take action after Ms. Brown signaled him that something was wrong." [ECF No. 33 at 6]. Indeed, as described earlier, the Amended

656, 661 (6th Cir.2005) (holding that the plaintiff's allegations that a guard grabbed and rubbed his buttocks in a degrading manner during a shakedown in the food area was insufficient to establish an Eighth Amendment violation); *Hughes v. Smith*, 237 F. App'x 756, 759 (3d Cir.2007) (holding that the inmate had not alleged an Eighth Amendment violation where the correctional officer allegedly touched the inmate's testicles through his clothing during a single pat-down frisk); *Young v. Brock*, No. 10–cv–01513, 2012 U.S. Dist. LEXIS 14262, 2012 WL 385494, at *4 (D. Colo. Feb.7, 2012) (holding that the plaintiff's allegations that he was subjected to unnecessary and unwelcomed sexual touching by a prison guard in the course of a single pat-down search did not state a claim under the Eighth Amendment, particularly where the plaintiff conceded that the pat-down had a penological purpose); *Pantusco v. Sorrell*, No. 09–cv–3518, 2011 U.S. Dist. LEXIS 58040, 2011 WL 2148392, at *7–8 (D.N.J. May 31, 2011) (holding that the plaintiff's Eighth Amendment claim failed because a single instance of groping during a routine hand frisk did not amount to cruel and unusual punishment); *Escobar v. Reid*, 668 F.Supp.2d 1260, 1278, 1295–96 (D. Colo. 2009) (holding that a guard's alleged suggestive, sexual touching of an inmate did not state a constitutional violation); *Williams v. Anderson*, No. Civ. A. 03–3254, 2004 U.S. Dist. LEXIS 20305, 2004 WL 2282927, at *4 (D. Kan. Sept. 7, 2004) (finding no Eighth Amendment violation where a prison guard grabbed a pre-trial detainee's buttocks, exposed his genitals to the inmate plaintiff, and made crude sexual remarks).

Complaint alleges that the Defendants knew Thornhill was violent. [Doc. 9 at ¶ 15]. Even after he knew what had happened on the way to the hearing, Burnett is alleged to have initially told Ms. Brown she would not have to ride back to the jail with Thornhill, but ultimately put her in the car with Thornhill, even though an alternative means of transport was available. [Doc. 9 at ¶¶ 50, 51, and 55]. Ms. Brown further argues that "[t]o compound the cruelty and wantonness of this situation, after being notified that Ms. Brown was extremely distressed and 'could not handle riding with Thornhill' on the return trip, Defendant Burnett placed Ms. Brown with Thornhill again, subjecting her to an additional thirty minutes of psychological trauma and damaging physical effects." [ECF No. 33 at 6].

Thus, plaintiff's theory is grounded in the Eighth Amendment's prohibition against cruel and unusual punishment which has been interpreted to impose a duty upon prison officials to take reasonable measures "'to protect prisoners from violence at the hands of other prisoners.'" *Farmer v. Brennan*, 511 U.S. at 833, 114 S.Ct. at 1976 (*quoting Cortes-Quinones v. Jimenez–Nettleship*, 842 F.2d 556, 558 (1st Cir. 1988)). While "[i]t is not ... every injury suffered by one prisoner at the hands of another that translates into constitutional liability for prison officials responsible for a victim's safety," "[b]eing violently assaulted in prison is simply not 'part of the penalty that criminal offenders pay for their offenses against society.'" *Farmer*, 511 U.S. at 834, 114 S.Ct. at 1977 (*quoting Rhodes v. Chapman*, 452 U.S. 337, 345, 101 S.Ct. 2392, 2398, 69 L.Ed.2d 59(1981)). Accordingly, "[a] prison official's deliberate indifference to a substantial risk of serious harm to an inmate violates the Eighth Amendment." *Id.* at 828, 114 S.Ct. at 1974.

Deliberate indifference requires consciousness of a risk to an inmates health or safety; that is, the official must be "subjectively aware of the risk." *Farmer*, 511 U.S. at 833–847. The risk of harm is evaluated objectively. *Betts,* 621 F.3d at 256. Thus, in order to succeed on a

failure to protect claim under the Eighth Amendment, a prisoner must show that: (1) he was incarcerated under conditions posing a substantial risk of serious harm; (2) the defendant was "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists;" (3) the defendant actually drew this inference; and (4) the defendant deliberately disregarded the apparent risk. *Farmer,* 511 U.S. at 834–37; *see Jones v. Day,* 2007 WL 30195 at *3 (W.D. Pa. 2007), ("[i]t is not an objective test for deliberate indifference; rather, the court must look to what the prison official actually knew, rather than what a reasonable official in his position should have known"); *see also Jones v. Beard,* 145 F. App'x 743, 745 (3d Cir. 2005); *Schaffer v. Wilson*, 2007 WL 589023, at *3–4 (W.D. Pa. Feb. 20, 2007).

A plaintiff may satisfy his burden of establishing the defendant's actual knowledge of serious risk "in the usual ways, including inference from circumstantial evidence." *Farmer,* 511 U.S. at 842. Further, the inquiry focuses on the awareness of a substantial risk of harm *vel non,* rather than awareness of particular characteristics of that harm. That is, a prison official who is aware of an obvious and substantial risk to inmate safety will not escape liability for deliberate indifference simply because he did not actually know that the claimant was "especially likely to be assaulted by the specific prisoner who eventually committed the assault." *Id.* at 843.

Plaintiff's allegations as to Defendant Burnett differ from and are less compelling than those as to Defendant Clemente, non-movant. She alleges that she "knows she caught Defendant Burnett's attention, but he did not take any action." [ECF No. 9 at 38]. In contrast, her allegations as to Defendant Clemente are more specific as to his awareness: "Clemente admitted that he saw Ms. Brown trying to get the constables' attention . . . by the look on Ms. Brown's face he 'knew something was wrong.'" [ECF No. 9. at ¶ 38 b, c].

We reiterate that to be actionable, the "punishment" must be "objectively, sufficiently serious," and the official must have acted with a "sufficiently culpable state of mind." *Farmer*, 511 U.S. at 834.   A fair reading of the Amended Complaint leads us to conclude that Plaintiff has not stated a claim for cruel and unusual punishment under the Eighth Amendment as to this Defendant with respect to her allegation that Burnett failed to protect her from Thornhill's actions.   There is scant factual support to that legal conclusion. We will therefore grant the motion to dismiss Count I but permit a curative amendment as to failure to protect, should plaintiff so choose. *Phillips v. County of Allegheny*, 515 F.3d 224, 236 (3d Cir. 2008) (holding that district courts must permit curative amendments "unless an amendment would be inequitable or futile").

Accordingly, the dismissal of Count I will be granted as to the cruel and unusual punishment claim but plaintiff is granted leave to file an amended complaint alleging failure to protect.

### C.  Whether Plaintiff's claim is barred by the explicit source rule

Defendant next argues that Ms. Brown's Fourteenth Amendment claim at Count II is barred by the explicit source rule. *County of Sacramento v. Lewis*, 523 U.S. 833,  843–44 (1998). Under this rule " 'if a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process.'" *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 259–60 (3d Cir. 2010) (*quoting United States v. Lanier*, 520 U.S. 259, 272 n. 7, 117 S.Ct. 1219, 137 L.Ed.2d 432 (1997)).

In *Betts* the Third Circuit Court of Appeals applied the more-specific-provision rule (a.k.a. the explicit textual source rule) in a case where the plaintiff, a juvenile adjudicated

delinquent and committed to the custody of Pennsylvania's Department of Welfare's Bureau of Juvenile Justice Services, brought both substantive due process and Eighth Amendment claims challenging the same conduct concerning conditions of his confinement and an alleged failure by Defendants to ensure his safety. The court held that "[b]ecause these allegations fit squarely within the Eighth Amendment's prohibition on cruel and unusual punishment, we hold that the more-specific-provision rule forecloses Betts' substantive due process claims." *Id*. at 261.

We find that the explicit source rule does not apply herein, as Ms. Brown has articulated and seeks redress under two separate and independent sources of protection: the prohibition against cruel and unusual punishment under the Eighth Amendment and second, the state-created danger theory established in *Kneipp v. Tedder,* 95 F.3d 1199, 1208 (3d Cir. 1996), as part of the Fourteenth Amendment's protections.

Our decision rests in large part on Ms. Brown's unique dual status as a prisoner and pretrial detainee. She is alleged to have been serving time for one minor, summary offense, which triggered a violation of her probation and was being transported to her summary trial in McKeesport. The difference in status between a convicted prisoner and a pretrial detainee is important to determine the source and extent of Plaintiff's liberty and substantive due process rights. The Eighth Amendment applies only after the state "has secured a formal adjudication of guilt" because, prior to that time, it has not acquired "the power to punish with which the Eighth Amendment is concerned." *Tri Thanh Nguyen v. Franklin Cnty. Sheriffs Dep't*, 512 Fed.Appx. 188, 190 (3d Cir.2013), *quoting Ingraham v. Wright*, 430 U.S. 651, 671 n. 40, 97 S.Ct. 1401, 51 L.Ed.2d 711 (1977). Once convicted, the Eighth Amendment then imposes a duty on prison officials to provide "humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care." *Farmer v. Brennan*, 511 U.S. at 832.

With respect to pretrial detainees, because one may not be punished prior to conviction and sentencing, the Due Process Clause of the Fourteenth Amendment prohibits prison officials from imposing conditions that amount to punishment of a pretrial detainee. *Hubbard v. Taylor*, 399 F.3d 150, 158 (3d Cir.2005), *citing Bell v. Wolfish, supra*. Accordingly, pretrial detainees are afforded greater constitutional protection under the Fourteenth Amendment than that provided to convicted prisoners under the Eighth Amendment. *Id*. at 167 n. 23 (citation omitted). Because Defendants' Motion to Dismiss Plaintiff's Fourteenth Amendment claims is predicated upon an erroneous application of the explicit textual source rule, and out of an abundance of caution, it will be denied.

### D. Whether the plaintiff has stated a claim under the Fourteenth Amendment

Plaintiff alleges in Count II that defendant violated her rights under the Fourteenth Amendment, pursuant to 42 U.S.C. §1983, by subjecting her to a state-created danger and acting with deliberate indifference and/or gross negligence or arbitrariness, and alleges that his actions shock the conscience [ECF No. 9 at ¶¶ 77-79].

Although the due process clause does not impose an affirmative obligation on the state to protect it citizens, *DeShaney v. Winnebago County Dept. of Soc. Servs.,* 489 U.S. 189, 195-96 (1989), under the state created danger doctrine, the state may assume responsibility for the safety of an individual for whom it affirmatively creates or enhances a risk of danger. *Kneipp v. Tedder*, 95 F.3d 1199, 1208 (3d. Cir. 1996).

The Third Circuit has established a four- factor test to make out such a claim: (1) the harm ultimately caused was foreseeable and fairly direct; (2) a state actor acted with a degree of culpability that shocks the conscience; (3) a relationship between the state and the plaintiff existed such that the plaintiff was a foreseeable victim of the defendant's acts, or a member of a

discrete class of persons subjected to the potential harm brought about by the state's actions, as opposed to a member of the public in general; and (4) a state actor affirmatively used his or her authority in a way that created a danger to the citizen or that rendered the citizen more vulnerable to danger than had the state not acted at all. *Bright v. Westmoreland County*, 443 F.3d 276, 281 (3d Cir. 2006) (quotations and footnotes omitted). A plaintiff's failure to satisfy any one of the above elements will defeat the state created danger claim. *See Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 914 (3d Cir.1997).

Defendant attacks Count II by asserting that Plaintiff has failed to allege facts sufficient to meet the first and second elements of the state-created danger test. [ECF No. 37 at 4-6].[3]

Courts in the Third Circuit hold that to effectively establish the first element of a state-created danger claim, i.e., foreseeable and direct harm, a plaintiff must demonstrate " 'an awareness on the part of the state actors that rises to the level of actual or an awareness of risk that is sufficiently concrete to put the actors on notice of the harm' "and that the harm was " 'a fairly direct result of the defendant's acts.' " *Id.* (quoting *Phillips*, 515 F.3d at 238, 239). Foreseeability requires that officials were aware, and thus on notice, of the risk of harm, while the "fairly direct" portion of the test provides that defendants' actions cannot be "separated from the ultimate harm by a lengthy period of time and intervening forces and actions." *Henry v. City of Erie*, 728 F.3d 275, 282 (3d Cir. 2013).

We find that Ms. Brown has pled facts that state a plausible claim under the first prong of the state-created danger test. She has alleged that just prior to transport, Ms. Brown heard the constables discussing Thornhill, stating that they needed to be careful with Thornhill because he was violent. [ECF No. 9 at ¶ 15]. They went on to say that the last time Thornhill was in a police vehicle he had, while handcuffed and shackled, (1) slipped his handcuffs, (2) kicked out one of

_____
[3] We find that Ms. Brown has adequately pled the third and fourth elements.

the vehicle's back doors, (3) fled from police, and (4) car jacked a woman before being caught. [ECF No. 9 at ¶ 16]. Ms. Brown further alleges she was immediately afraid to ride with someone who was strong enough to escape from a locked police car and tried not to meet Thornhill's eyes or draw attention to herself. [ECF No. 9 at ¶ 17]. This presents a plausible claim that defendant was aware of a risk of harm and that the harm was a fairly direct result of his actions.

The second element of the state-created danger test requires Plaintiffs to plausibly plead that Defendant's behavior "shocks the conscience." *Bright,* 443 F.3d at 281. First, it is important to note that "negligence is not enough to shock the conscience under any circumstances." *Schieber v. City of Phila.,* 320 F.3d 409, 419 (3d Cir.2003). To shock the conscience in the constitutional sense requires facts suggesting that officials acted at least with "deliberate indifference" or even with "intent to cause harm." *See Sanford v. Stiles*, 456 F.3d 298, 309 (3d Cir. 2006) (per curiam) (explaining that in situations requiring officials to make decisions without time to deliberate, the standard is heightened and Plaintiffs must show intent to harm instead of mere deliberate indifference). Burnett is not alleged to have been acting in a "hyperpressurized environment"—such as a high speed car chase—that would require intent to cause harm; he instead operated in an environment where he could make "unhurried judgments" about the transportation of incarcerated individuals. His allegedly unconstitutional actions are therefore governed by the deliberate indifference standard. *Walter v. Pike Cnty., Pa.,* 544 F.3d 182, 192 (3d Cir. 2008) (internal citation and quotation marks omitted).

Our Court of Appeals has crafted its definition of deliberate indifference for substantive due process purposes from Eighth Amendment precedent, explaining that it requires the official to " 'both be aware of facts from which the inference could be drawn that a substantial risk of

serious harm exists, and ... also draw the inference,' " *Nicini*, 212 F.3d 798, 811 (3d Cir. 2000)

(*quoting Farmer*, 511 U.S. at 837, 114 S.Ct. 1970); *Customers Bank v. Municipality of*

*Norristown*, 942 F.Supp.2d 534, 542 (E.D. Pa. 2013) *aff'd*, 563 Fed. Appx. 201 (3d Cir. 2014).

The facts alleged in the Amended Complaint suggest that Burnett was deliberately

indifferent, thereby establishing a level of culpability that was conscience shocking.  The factual

averments indicate that Burnett was aware that Thornhill was a danger to her, having been told

Thornhill  had carjacked another woman in the past after escaping police custody, and despite

this, failed to monitor the goings on in the back seat, and on the return trip placed her back into

the same vehicle with Thornhill,  after Burnett knew Thornhill had exposed himself to Ms.

Brown on the way to the magistrate court.  We therefore find that plaintiff has sufficiently pled a

claim of state created danger under the Fourteenth Amendment. Defendant's Motion to Dismiss

will be denied as to Count II.

**E.  Whether plaintiff has stated a claim for intentional infliction of emotional distress under**
**Pennsylvania law**

At Count III Ms. Brown alleges that Defendants intentionally or recklessly inflicted

severe emotional distress by placing her in the backseat of a police car with Thornhill, whom

they knew was violent, failed to monitor Thornhill during the 45 minute trip, chose to ignore her

attempt to alert them via the rearview mirror, despite noticing her attempts to do so, and forcing

her back into the car with him knowing she was distressed and placing the responsibility for her

safety on another male inmate.  [ECF No. 9 at ¶ 83].   She has alleged extreme mental trauma,

anxiety, depression, embarrassment, and humiliation, as well as pain and suffering and economic

damages as a result.  [ECF No. 9 at ¶ 85].

Defendant moves to dismiss Count III on the grounds that Ms. Brown has failed to plead any conduct which was intentional or which rises to the level of "extreme" and "outrageous." "Plaintiff has alleged that Defendants were doing their jobs, which included transporting the two inmates to their hearings. Plaintiff did not plead that the Defendant was aware of the interaction between the two inmates, and specifically plead that she only attempted to notify the Defendant through 'eye contact' and 'facial expressions.'" [ECF No. 30 at 9].

The tort of intentional infliction of emotional distress is defined under Pennsylvania law as one in which "[o]ne who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm." *Shaner v. Synthes*, 204 F.3d 494, 507 (3d Cir. 2000). Courts are wary of allowing recovery for claims of intentional infliction of emotional distress, and liability will only be found where "the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." *Esposito v. Galli,* 2006 WL 2322487, at *15 (M.D. Pa. Aug.9, 2006) (*quoting Fox v. Horn*, 2000 WL 49374, at *9 (E.D. Pa.2000)). To establish an intentional infliction of emotional distress claim under Pennsylvania law, a plaintiff must present "objective proof supported by competent medical evidence that the plaintiff actually suffered the claimed distress." *Id*.

After a careful review of the Amended Complaint, we find that Plaintiff has stated a claim for intentional infliction of emotional distress. Again, we note that she has alleged that Burnett was put on notice of Thornhill's dangerous nature, and ignored her request to ride with someone else even after he knew she was in severe distress and that another vehicle was

available. She has also adequately pled that she has suffered extreme mental trauma, anxiety, depression, and the like.

In the alternative Defendant asks that we dismiss the pendent state claim, assuming we dismiss the federal claims. 28 U.S.C. § 1367. Having ruled that the federal claims are viable, we will deny the motion to dismiss the pendant state law claim on that particular ground.

## V. Conclusion

For the reasons and as more specifically stated herein, we will grant the Motion to Dismiss in part and deny it in part.

An appropriate order follows.


Dated: January 7, 2016                    /s/  *Robert C. Mitchell*

                                          ROBERT C. MITCHELL
                                          United States Magistrate Judge

Cc: record counsel via CM-ECF

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TARA BROWN, | ) | |
| Plaintiff, | ) | Civil Action No. 15-284 |
| | ) | |
| v. | ) | Magistrate Judge Robert C. Mitchell |
| | ) | |
| ROBERT BURNETT and JOSEPH | ) | |
| CLEMENTE           , | ) | |
| Defendants. | ) | |

## ORDER

AND NOW, to-wit, this 7th day of January, 2016, for the reasons stated in the Opinion filed contemporaneously herewith, it is hereby ORDERED that Defendant Robert Burnett's Motion to Dismiss [ECF No. 29] be and the same hereby is GRANTED IN PART and DENIED IN PART as follows:

a. The motion to dismiss is GRANTED as to Plaintiff's claim (Count I) of cruel and unusual punishment under the Eighth Amendment but leave is granted to amend the complaint to set forth a claim of failure to protect; AND

b. The motion to dismiss is DENIED as to Counts II and III.

IT IS FURTHER ORDERED THAT Plaintiff is granted leave to file a Second Amended Complaint on or before January 22, 2016 in order to address pleading deficiencies identified herein.

/s/ Robert C. Mitchell
ROBERT C. MITCHELL
United States Magistrate Judge

Cc: record counsel via CM-ECF